**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| DOS BEACHES, LLC and MELINDA M. RAYTER,<br><br>　　　　　　　　　　　　Plaintiff,<br><br>　vs.<br><br>MAIL BOXES ETC., INC. and UNITED PARCEL SERVICE, INC.,<br><br>　　　　　　　　　　　　Defendant. | CASE NO. 09CV2401-LAB (RBB)<br><br>**ORDER ON DEFENDANT'S MOTION TO DISMISS** |

　　　　Dos Beaches has filed an amended complaint containing a single claim alleging that Mail Boxes Etc., franchisor of a UPS Store operated by Dos Beaches, breached the covenant of good faith and fair dealing in their contractual relationship. Now pending is MBE's motion to dismiss.

**I.　Legal Standards**

　　　　The relevant law hasn't changed since the Court last dismissed Dos Beaches' complaint. The Court will restate it here.

**A.　Motion to Dismiss**

　　　　A 12(b)(6) motion to dismiss for failure to state a claim challenges the legal sufficiency of a complaint. *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). In considering such a motion, the Court accepts all allegations of material fact as true and construes them in the

light most favorable to Dos Beaches. *Cedars-Sinai Med. Ctr. v. Nat'l League of Postmasters of U.S.*, 497 F.3d 972, 975 (9th Cir. 2007). To defeat a 12(b)(6) motion, a complaint's factual allegations needn't be detailed; they must simply be sufficient to "raise a right to relief above the speculative level . . . ." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). However, "some threshold of plausibility must be crossed at the outset" before a case can go forward. *Id.* at 558 (internal quotations omitted). A claim has "facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.*

While the Court must draw all reasonable inferences in Dos Beaches' favor, it need not "necessarily assume the truth of legal conclusions merely because they are cast in the form of factual allegations." *Warren v. Fox Family Worldwide, Inc.*, 328 F.3d 1136, 1139 (9th Cir. 2003) (internal quotations omitted). In fact, the Court does not need to accept any legal conclusions as true. *Iqbal*, 129 S.Ct. at 1949. A complaint does not suffice "if it tenders naked assertions devoid of further factual enhancement." *Id.* (internal quotations omitted). Nor does it suffice if it contains a merely formulaic recitation of the elements of a cause of action. *Bell Atl. Corp.*, 550 U.S. at 555.

**B.     Covenant of Good Faith and Fair Dealing**

The covenant of good faith and fair dealing, "implied by law in every contract, exists merely to prevent one contracting party from unfairly frustrating the other party's right to receive the benefits of the agreement actually made." *Guz v. Bechtel Nat. Inc.*, 24 Cal.4th 317, 349 (2000). The covenant finds particular application—although it is not limited to—"situations where one party is invested with a discretionary power affecting the rights of another. Such power must be exercised in good faith." *Carma Developers, Inc. v. Marathon Development California, Inc.*, 2 Cal.4th 342, 372 (1992); *see also Locke v. Warner Bros., Inc.*, 57 Cal.App.4th 354, 363 (Cal. Ct. App. 1997). There are two important points to be made about the scope of the covenant.

First, there's no prerequisite that the underlying contract be breached in order for the covenant of good faith and fair dealing to be breached. "Were it otherwise, the covenant would have no practical meaning, for any breach thereof would necessarily involve breach of some other term of the contract." *Carma*, 2 Cal.4th at 373.

Second, the covenant of good faith and fair dealing is still tethered to the underlying contract, and cannot impose duties that aren't contemplated by it. "It is universally recognized the scope of conduct prohibited by the covenant of good faith is circumscribed by the purposes and express terms of the contract." *Id.* The covenant "cannot impose substantive duties or limits on the contracting parties beyond those incorporated in the specific terms of their agreement." *Guz*, 24 Cal.4th at 349. *See also Carma*, 2 Cal.4th at 374 ("We are aware of no reported case in which a court has held the covenant of good faith may be read to prohibit a party from doing that which is expressly permitted by agreement. On the contrary, as a general matter, implied terms should never be read to vary express terms."); *Los Angeles Equestrian Ctr., Inc. v. City of Los Angeles*, 17 Cal.App.4th 432, 447 (Cal. Ct. App. 1993) ("If there exists a contractual relationship between the parties . . . the implied covenant is limited to assuring compliance with the express terms of the contract, and cannot be extended to create obligations not contemplated in the contract.").

The covenant, in other words, "is designed to effectuate the intentions and reasonable expectations of parties reflected by mutual promises within the contract." *Nein v. HostPro, Inc.*, 174 Cal.App.4th 833, 852 (Cal. Ct. App. 2009). It's not limited to the express duties in the contract, but it's not the functional equivalent of an addendum or rider to the contract, either.

**II.    Discussion**

Dos Beaches points to seven things MBE allegedly did in breach of the covenant of good faith and fair dealing. Any one, individually, could give rise to a claim, and so the Court will address them individually.

**A.    Location of Dos Beaches' Franchise**

The first grievance of Dos Beaches giving rise to its claim is that MBE determined the

location of Dos Beaches' UPS Store Franchise *and* misrepresented how profitable the franchise would be in that location. (SAC ¶¶ 15–17.)

This can't be right. The Franchise Agreement is clear that the *franchisee* first selects a location, for MBE to accept before the Franchise Agreement is even official. Moreover, the franchisee makes its selection on the understanding that it is ultimately responsible for it and cannot later attempt to hold MBE liable for any assistance it may have offered.

> You understand that while MBE or its Area Franchisee may assist you in selecting a site for your Center and provide input regarding the terms and conditions of the lease and may assist in negotiating the lease, the ultimate decision and final responsibility on whether to accept the site and the lease is yours. You hereby release and hold MBE and its Area Franchisee harmless from any liability resulting from their efforts to assist you in selecting a site or negotiating a lease . . . . You also understand that there is a risk that the site you select or the lease you sign may not meet all of your expectations or desires.

(Offering Circular ¶ 3.) Dos Beaches signed the Franchise Agreement first, on September 7, 2004. And *Dos Beaches*, not MBE, named the location of its franchise: 341 East 81st Street in Merrillville, Indiana. It wasn't until MBE later signed the Franchise Agreement, on September 29, 2004, that it accepted the East 81st Street location and the Franchise Agreement became a binding contract. The Franchise Agreement is clear on this:

> The location of Franchisee's Center, set forth on page one of this Agreement, has been accepted by MBE. Nevertheless, MBE's acceptance of the location set forth above as the Location shall in no way constitute a representation nor an express or implied warranty as to the viability or success of a Center at such location. Upon MBE's acceptance of such proposed location, such location shall be deemed to be the "Location", as defined herein below.

(Franchise Agreement at 6.) If Dos Beaches believed it hadn't been given a meaningful opportunity to scout out its own franchise location, and that MBE forced the location on it, the solution was simple: Dos Beaches should have never signed the Franchise Agreement on September 7, 2004 and presented it to MBE for acceptance.

There are at least two reasons, then, why Dos Beaches can't state a claim here for breach of the covenant of good faith and fair dealing. First, there wasn't a live contract between the parties when the franchise location was chosen such that the covenant of good

faith and fair dealing even existed.  And second, given that the Franchise Agreement clearly places the burden on the franchisee to select a location *and* releases MBE from any liability arising out of this selection, Dos Beaches' claim would plainly violate the principle that the covenant "cannot impose substantive duties or limits on the contracting parties beyond those incorporated in the specific terms of their agreement." *Guz*, 24 Cal.4th at 349.  Indeed, letting Dos Beaches' claim go forward would effectively write those express terms out of the Franchise Agreement.

### B.     Display of the UPS Logo

The Franchise Agreement gives Dos Beaches the right to use and display the UPS logo. (Franchise Agreement at 2.)  There's no dispute about that.  Dos Beaches alleges, however, that MBE breached the covenant of good faith and fair dealing by: (1) insisting on negotiating a commercial lease on Dos Beaches' behalf; and (2) negotiating a lease that precluded Dos Beaches from displaying the UPS logo. (SAC ¶¶ 18–23.)

Dos Beaches runs into the same problem here as it does above.  The Franchise Agreement expressly places the ultimate responsibility for accepting a lease on Dos Beaches, and it releases MBE from any liability resulting from its own efforts to assist in negotiating a lease. (Offering Circular ¶ 3.)  Allowing Dos Beaches to sue MBE for negotiating an inadequate lease would, again, essentially write these terms out of the Franchise Agreement, and the covenant of good faith and fair dealing isn't that powerful. Moreover, the lease between Dos Beaches and its landlord was entered into on September 7, 2004, before the Franchise Agreement was accepted by MBE—that is, before the Franchise Agreement became a binding contract and the covenant of good faith and fair dealing came into play. (Franchise Agreement at Ex. I-1.)  If Dos Beaches was uncomfortable with its lease, it either shouldn't have signed it or the Franchise Agreement.

### C.     Interference with Lease Modification

According to Dos Beaches, when its UPS Store was underperforming it entered into talks with its landlord to both lower the rent and modify the lease to allow it to display the UPS logo—and MBE interfered.  Dos Beaches alleges that MBE both "eliminat[ed] the

reduction of rent" (which seems like something only the landlord could do) and eliminated any incentive for the landlord to work with Dos Beaches by saying a competitor, Max Molinaro, would be taking over the space. (SAC ¶ 25.)

MBE tries to eliminate this claim by arguing that Dos Beaches "does not refer to any express benefit conferred it under the Franchise Agreement that MBE unfairly interfered with." (Dkt. No. 38 at 10.) Obviously, MBE is seizing here on the principle that a claim for breach of the covenant of good faith and fair dealing "is limited to assuring compliance with the express terms of the contract . . . ." *Angeles Equestrian Ctr.*, 17 Cal.App.4th at 447. But there is a relevant express term here. As noted, the Franchise Agreement places the responsibility for negotiating a lease on Dos Beaches. It even advises Dos Beaches to retain an attorney or real estate broker to negotiate the lease. With this warning, Dos Beaches could have sensibly expected that MBE wouldn't intervene in its lease negotiations in a manner adverse to Dos Beaches' interests. By executing the Franchise Agreement, in other words, Dos Beaches bargained for the benefit, among other things, of negotiating its own lease, and the covenant of good faith and fair dealing exists precisely to "prevent one contracting party from unfairly frustrating the other party's right to receive the benefits of the agreement actually made." *Guz*, 24 Cal.4th at 349. To the extent Dos Beaches alleges that MBE interfered with this benefit, it has stated a claim for breach of the covenant of good faith and fair dealing. True, the Franchise Agreement releases MBE from any liability for its efforts in *assisting* in lease negotiations, but that doesn't mean it also releases MBE from liability for *impeding* lease negotiations.

### D. Refusal to Provide Marketing Materials

Dos Beaches alleges that MBE promised it marketing materials before it signed the Franchise Agreement, but that MBE subsequently "did not supply Plaintiff with marketing materials of the same quantity and quality as the marketing materials that it provided to other franchisees." (SAC ¶ 30.)

There's an obvious problem with trying to state a claim here for breach of the covenant of good faith and fair dealing. *Nowhere* in the Franchise Agreement are

promotional materials mentioned. Indeed, Dos Beaches only alleges that they were promised before the Franchise Agreement was executed, presumably as an enticement. The covenant, however, can't impose duties or obligations "beyond those incorporated in the specific terms of the[ ] agreement." *Guz*, 24 Cal.4th at 349. It is strictly intended to satisfy the "reasonable expectations of parties reflected by mutual promises *within the contract*." *Nein*, 174 Cal.App.4th at 852 (emphasis added). The promise of promotional materials, however, is completely extraneous to the Franchise Agreement, and again, holding MBE to such a promise would either re-write the Franchise Agreement or impose a supplemental agreement altogether. That's not the purpose of the covenant of good faith and fair dealing.

### E.     Refusal to Grant Request to Relocate

Frustrated with the success of its UPS Store at its initial location, Dos Beaches began to try to grow its customer base in another area with the goal of relocating to that area. MBE refused to grant Dos Beaches permission to move, however, and Dos Beaches claims this was a breach of the covenant of good faith and fair dealing. (SAC ¶¶ 32–34.)

The Court previously suggested that this particular claim might be plausible because it at least has some grounding in the Franchise Agreement. Specifically, the Franchise Agreement allows the franchisee to relocate with MBE's written consent:

> Franchisee may relocate Franchisee's Center (even within the Territory) only with MBE's prior written consent, and upon such terms and conditions as MBE may prescribe in the Manuals, which may include: (I) modification of the boundaries of the Territory; and (ii) upgrading, renovating or remodeling the proposed new location to the then-current design, and other criteria or specifications indicated in the Manuals.

(Franchise Agreement at 2.) The implication of this is that if Dos Beaches' first location turned out to be a dud, MBE would be open to a relocation on certain terms. This was a reasonable expectation on Dos Beaches' part having executed the Franchise Agreement. To be sure, this isn't a promise that a relocation would be authorized no matter what, but the Court refused to rule out the possibility that the *unreasonable* refusal of a relocation request may constitute a breach of the covenant of good faith and fair dealing:

> Consider the Relocation Claim, for example. Here, Rayter points to a particular contractual provision that allows for

> relocation "only with MBE's prior written consent, and upon such terms and conditions as MBE may prescribe in the Manuals . . . ." If Rayter contends that Defendants were completely and deliberately unreasonable in considering her request for relocation, the Court can envision a credible argument that this "unfairly frustrat[ed] [Rayter's] right to receive the benefits of the agreement actually made." *Guz*, 24 Cal.4th at 349.

(Dkt. No. 35 at 20.) MBE now argues that the Court was wrong, and that MBE "did not agree that it would exercise its discretion to permit Dos Beaches to [relocate] either reasonably or in good faith." (Dkt. No. 38 at 13.) Rather, "the Franchise Agreement gave MBE the right to refuse consent without limitation." (*Id.*) MBE relies upon *Third Story Music, Inc. v. Waits*, 41 Cal.App.4th 798 (Cal Ct. App. 1995).

In *Waits*, the court set out to resolve "an apparent inconsistency between the principle that the covenant of good faith should be applied to restrict exercise of a discretionary power and the principle that an implied covenant must never vary the express terms of the parties' agreement." *Id.* at 804. Or, to put it another way, "When an agreement expressly gives to one party absolute discretion over whether or not to perform, when should the implied covenant of good faith and fair dealing be applied to limit its discretion?" *Id.* at 802. Here's the answer: when the agreement would be illusory without the covenant.

> The conclusion to be drawn is that courts are not at liberty to imply a covenant directly at odds with a contract's express grant of discretionary power except in those relatively rare instances when reading the provision literally would, contrary to the parties' clear intention, result in an unenforceable, illusory agreement.

*Id.* at 808. The court went on to explain that an illusory promise in an agreement doesn't make the agreement itself illusory, provided it is supported by consideration.

> The TSM/Warner agreement states that Warner may market the Waits recordings, or "at its election" refrain from all marketing efforts. Read literally, as the trial court did and respondent would have us do, this is a textbook example of an illusory promise. At the same time, there can be no question that the parties intended to enter into an enforceable contract with binding promises on both sides. Were this the only consideration given by Warner, a promise to use good faith would necessarily be in
>
> The illusory promise was not, however, the only consideration given by the licensee. . . . It follows that, whether or not an implied covenant is read into the agreement, the agreement would be supported by consideration and would be binding.

*Id.* at 808. *Waits* clearly cuts in MBE's favor. Even if there is an illusory quality to MBE's discretion to approve Dos Beaches' relocation, the Franchise Agreement isn't just a relocation agreement; there are plenty of other terms supported by ample consideration on both sides. That ends the argument here. Under *Waits*, the Court cannot imply a covenant of good faith and fair dealing with respect to the relocation clause of the Franchise Agreement.

### F.    Divulging Confidential Information to a Competitor

Dos Beaches claims that MBE passed its confidential research on an alternative location to a favored competitor-franchisee, who then opened a UPS Store at that location. According to Dos Beaches, "[t]his essentially took the time, money and work that Plaintiff had invested in a targeted market area and converted it for the benefit of a competing franchisee, inflicting financial harm on Plaintiff's business by eliminating its ability to earn a profit." (SAC ¶ 38.)

The Franchise Agreement explicitly states that Dos Beaches has the exclusive right to operate a UPS Store within a certain territory, but it also gives MBE more or less total freedom to franchise other UPS Stores outside of that territory—no matter how close they are to Dos Beaches' UPS Store and no matter if they take away customers from Dos Beaches.

> Except as set forth in this Section 1.2, neither MBE or its Affiliates will own or operate a Center, as that term is specifically defined herein, nor license or franchise others to do so at any site located within the Territory.
>
> MBE expressly reserves (for itself and for its Designees) the exclusive, unrestricted right to produce, franchise, license, sell, distribute and market any products or services (under any brands, including but not limited to the Marks) from any Retail Outlets (including, but not limited to, traditional Centers or Non-Traditional Sites) the physical premises of which are located outside of the Territory, regardless of (I) the proximity of such Retail Outlet to the Franchisee's Center at the Location, or (ii) whether or not such products or services are purchased by customers whose residences or places of business are located within the Territory.

(Franchise Agreement at 2.) So, simply allowing Molinaro to open a competing UPS Store outside of Dos Beaches' territory cannot give rise to a claim for breach of the covenant of

good faith and fair dealing. Can the disclosure of Dos Beaches market research to Molinaro state a claim, though? The Court doesn't believe so. First, it has already found that there's no language whatsoever in the Franchise Agreement pertaining to the disclosure of a franchisee's information, and returning to a recurring principle, the Court cannot create obligations under the covenant of good faith and fair dealing that aren't incorporated or contemplated in the Franchise Agreement's terms. Second, the purpose of the covenant is to "prevent one contracting party from unfairly frustrating the other party's right to receive the benefits of the agreement actually made," *Guz*, 24 Cal.4th at 349, and Dos Beaches can't argue that the disclosure of certain information to Molinaro frustrated its own right to operate a profitable UPS Store in its defined territory. The information was presumably useful only insofar as it helped Molinaro open a UPS Store outside of Dos Beaches' territory, and that is expressly allowed by the Franchise Agreement.

### G. Refusal to Grant Second Request to Relocate

Dos Beaches' final basis for its claim that MBE breached the covenant of good faith and fair dealing is that a second request to relocate was unreasonably handled by MBE. This cannot be the basis of a claim for the same reason that the rejection of its first relocation request cannot be the basis of a claim: the Franchise Agreement gives MBE discretion to reject a relocation request, and the covenant of good faith and fair dealing can't govern the exercise of that discretion when, as a whole, the Franchise Agreement is supported by consideration on both sides.

## III. Conclusion

MBE's motion to dismiss is **GRANTED IN PART AND DENIED IN PART**. Dos Beaches' claim for breach of the covenant of good faith and fair dealing survives on one, narrow basis: the Franchise Agreement gives Dos Beaches the responsibility and right to negotiate a lease, but in the end MBE inserted itself into Dos Beaches' lease renegotiations and thwarted Dos Beaches' objectives. The Court certainly understands Dos Beaches' other grievances, but for the reasons given they cannot be the basis of a claim that MBE breached the covenant.

The Court acknowledges that when it last ruled on MBE's motion to dismiss, it hinted that Dos Beaches may have a more substantial claim that it is allowing here. (*See* Dkt. No. 35 at 20–21.) The explanation for this is simple: the complaint the Court was considering then simply wasn't clear *at all* as to what the specific bases of Dos Beaches' claim were, and the Court was forced to charitably speculate.

> The Defendants and the Court still have no idea what specific conduct of the Defendants is behind Rayter's claim. Again, the claim itself just incorporates by reference every single grievance against the Defendants, accompanied by the statement that [the] implied covenant was breached . . . . The Court considered *thirteen* different acts of Defendants that, in Rayter's mind, apparently give rise to a breach of contract claim. It is completely unclear whether she believes that all of them, or some subset of them, also give rise to a claim for breach of the covenant of good faith and fair dealing . . . .

(Dkt. No. 35 at 19.) Now that Dos Beaches' Second Amended Complaint offers explicit and specific bases for its claim, it's clear that many of those bases fail. In fact, almost all of them do. They fail because they either: (1) involve conduct that pre-dates the execution of the Franchise Agreement; (2) would eviscerate particular discretions the Franchise Agreement gives to MBE; or (3) attempt to ladle onto the Franchise Agreement obligations on MBE's part that simply don't appear in, or aren't contemplated by, its express terms.

It is time for this case to go forward, even if it does so with hardly a pulse. It survives a motion to dismiss on the most narrow of bases: the Franchise Agreement gives Dos Beaches the responsibility for negotiating a lease, but when it attempted to do so MBE inserted itself unnecessarily and adversely.

**IT IS SO ORDERED**.

DATED: May 23, 2012

*Larry A. Burns*

**HONORABLE LARRY ALAN BURNS**
United States District Judge